## SOUTH BEND PULLEY COMPANY ET AL. *v.*
## FIDELITY & DEPOSIT COMPANY.

[No. 4,367.   Filed May 14, 1903.   Rehearing denied November 6, 1903.   Transfer denied January 15, 1904.]

JUDGMENT.—*Principal and Surety.*—*Indemnity* —Plaintiff as surety for defendant executed a supersedeas bond to stay execution on a judgment which had been rendered against defendant in the state of Kentucky, and from which defendant appealed to the court of appeals of that state, defendant and another executing to plaintiff an indemnity bond. The judgment against the defendant was affirmed, and plaintiff urged defendant to settle the judgment, reminding defendant that, it being a nonresident, judgment would be rendered against plaintiff alone on the supersedeas bond, sent defendant a number of letters informing it of threatened suit on the bond, and finally notified it that suit had been brought. The defendant was not served with summons, and made no appearance, and judgment was rendered against the surety on default. *Held*, in an action on the indemnity bond, that defendant had sufficient notice of the threatened suit, and that the judgment against the surety was conclusive against defendant.

From St. Joseph Circuit Court; *W. A. Funk*, Judge.

Action by the Fidelity & Deposit Company of Maryland against the South Bend Pulley Company and another. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*Stuart MacKibben, J. M. Van Fleet* and *V. W. Van Fleet*, for appellants.

*Miller Guy, C. E. Pattee* and *George Ford*, for appellee.

BLACK, P. J.—The appellee, as surety for the South Bend Pulley Company, appellant, executed a supersedeas bond, to stay execution on a judgment which had been rendered against the latter in favor of the W. E. Caldwell Company, on a counterclaim, in the Jefferson Circuit Court of Kentucky, from which judgment the pulley company appealed to the court of appeals of that state, and the pulley company, with Harry B. Stull, the other

appellant, as surety, executed to the appellee an indemnity bond in the sum of $2,500, conditioned to "hold and keep harmless" the appellee "from and against any and all loss, damages, costs, charges, and expenses of whatever nature or kind which" the appellee "shall or may at any time sustain, incur, or be put to for, or by reason or in consequence of" the appellee's having given and executed the supersedeas bond; "also all costs and expenses which it may incur in investigating any claim made thereunder, or in or about prosecuting or defending any action, suit, or proceeding which may be commenced or prosecuted against said South Bend Pulley Company or against" the appellee upon the supersedeas bond, "or anywise in relation thereto." This was an action upon the bond of indemnity.

The complaint was in two paragraphs, the first showing that in 1895 the pulley company instituted in the Kentucky circuit court a suit against W. E. Caldwell Company; that January 19, 1897, the defendants in that suit recovered therein a judgment against the pulley company for $1,187.59, from which the pulley company appealed, and April 3, 1897, that company, with the appellee as surety, executed the supersedeas bond, and March 29, 1897, the indemnity bond here in suit was executed by the appellants; that December 7, 1899, the Kentucky court of appeals affirmed the judgment from which the appeal had been taken, and the pulley company refused and still refuses to pay that judgment, though requested by the appellee; that June 27, 1900, W. E. Caldwell Company instituted suit in the Jefferson Circuit Court of Kentucky against the pulley company and the appellee on the supersedeas bond, of which action the pulley company had due and timely notice, and it was requested by the appellee to appear thereto and defend, if any legal defense there should be to that action; that on October 18, 1900, the cause was submitted to trial, and

judgment was rendered in favor of W. E. Caldwell Company, against the appellee for $1,187.59, and interest thereon at six per cent. per annum from January 19, 1897, until paid and for certain items of costs; that the appellee demanded of the appellants that they satisfy this judgment, but they refused and still refuse to pay the same, and the appellee was forced to pay and did pay the judgment, amounting to $1,700, December 5, 1900, which sum is due and unpaid; that the appellants by their written bond agreed to indemnify, etc.; that the appellee demanded payment, etc. The second paragraph of complaint was to the same effect as the first, except that it was not alleged that the appellee requested the pulley company to appear to the action on the supersedeas bond, and to defend the same. The appellants answered separately in eight paragraphs—the first a general denial, and the second an answer of payment. The appellee replied by general denial, and the cause was tried before a jury. The overruling of the motion of the appellants for a new trial is assigned as error.

On the trial, the appellee having introduced its evidence and rested, the pulley company admitted the writing of certain letters and the receipt of certain other letters which had been introduced in evidence by the appellee. Thereupon the appellee moved the court to refuse to allow the appellants, or either of them, to introduce any evidence in support of their answers, except the first and second paragraphs thereof, which motion the court sustained; and the court then refused to permit the appellants, or either of them, to introduce any evidence in support of the answers, except the first and second paragraphs of each answer, or to swear any witnesses to give testimony in support of the answers, and the court instructed the jury to return a verdict for the appellee in the sum of $1,598.26, and the jury thereupon returned such verdict.

Thus the court, upon motion of the appellee, in effect, announced that it would permit the appellants to introduce evidence, if offered, under their first and second paragraphs of answer, but that it would not admit evidence in support of the other paragraphs. Nothing to the contrary appearing, it may be assumed that the appellants did not produce any witnesses or make any offer of proof under the first or second paragraph of answer, but, as to those paragraphs, allowed the case to go to the jury upon the evidence introduced by the appellee and the admission of the pulley company in evidence. Nor, as to the other paragraphs, did they produce any witnesses, or ask that any witnesses be sworn, or make any offer of proof under those paragraphs. So that it can not be said that the court rejected any particular witness, or that it excluded any definite evidence.

We observe that the third to the seventh paragraphs set up various matters as facts constituting a defense to the action on the supersedeas bond; and without determining whether they, or any of them, would have been so available, it is manifest that such facts would not be material in the action upon the indemnity bond if the appellee gave notice of the institution of the action on the supersedeas bond sufficient to require the principal obligor thereon to appear to the action, and therein to present such matters of defense. If 'the letters received and sent, as proved on the trial herein, constituted, when considered together, such notice, the appellants could have no ground of complaint because they were not permitted to proceed to introduce evidence in this action of such matters of defense to the former action. The judgment against the pulley company in favor of the Caldwell company having been affirmed on appeal December 7, 1899, the action upon the supersedeas bond was commenced June 27, 1900, against the pulley company and the appellee. Summons was served on the appellee, and was

returned "Not found" as to the pulley company.  Judgment upon default was rendered against the appellee, October 3, 1900.

The record contains a large number of letters, being correspondence between the pulley company and the appellee's general agent at Louisville, Kentucky, from March 3, 1900, to July 2, 1900, and also some letters of the attorney of the Caldwell company to the appellee and to the pulley company.  We can not take space to set out the contents or the substance of these letters, which we have read with care.  The pulley company was repeatedly urged in this correspondence to settle the judgment so affirmed, and was told of the apprehension of the agent that suit would be brought on the supersedeas bond, and was reminded that as the pulley company was not a resident of Kentucky the judgment would be against the appellee.  March 17, 1900, the agent of appellee wrote, "There is nothing now for you to do except to pay the claim, as there are no further steps to be taken in the matter, as judgment has been rendered against you."  Again in the same month he wrote, "If the matter is not promptly settled, it is more than likely that suit will be filed against the Fidelity & Deposit Company, on supersedeas bond, and this will only add to your expense, as we, of course, have no defense to make."  On March 28, 1900, the appellee's general agent wrote the pulley company, enclosing a letter of the day before from the attorney of the Caldwell company to the appellee's agent, in which, after referring to the supersedeas bond, and the affirmance of the judgment on appeal, and the failure of the pulley company to settle, it was said that, as the pulley company was a nonresident, it would be necessary to proceed against the appellee, and that unless the matter were adjusted within two or three weeks the writer would be compelled to institute suit against the appellee on the supersedeas bond.  In a letter from the

pulley company to the appellee's general agent, dated March 30, 1900, it was said: "In case they should start suit there, kindly keep us posted, and we will take such steps as seem wise in the matter under competent legal advice." In an answer to this, dated April 3, 1900, the appellee's agent told the pulley company: "They will take no further steps against you in the matter, but, our being residents of the state of Kentucky, they now look to us to settle for this judgment. * * * I would dislike very much to force" the attorney for the Caldwell company "to bring suit against us in the matter, for, in the first place, we would have no defense whatever. * * * Of course, we would be compelled to look to you for it." In a letter of April 16, 1900, from appellee's general agent to the pulley company, it was said: "It would not surprise me now to have a suit filed against us any day." On June 30, 1900, the general agent of the appellee wrote the pulley company that he had ascertained that the attorney for the Caldwell company the day before had "filed suit against us." In the answer of the pulley company of July 2, 1900, it was said: "We note what you say about action of" the attorney for the Caldwell company, "and we have only to say it will be a long time before we will pay on the basis of his demands. * * * If they want to sue, we have no way to prevent it, but we will defend to the 'long limit' against the collection of more than the amount."

Judgment was not rendered against the appellee in the action on the supersedeas bond until October 13, 1900, the pulley company having made no appearance. We think it can not properly be claimed that the pulley company did not have sufficient notice of the institution of the long threatened and expected suit, or that it did not have ample opportunity to defend the action; and therefore it must be held that the judgment rendered therein

against the indemnitee is conclusive against the pulley company and its surety on the bond of indemnity.

In the eighth paragraph of answer, the appellants, after setting out, as in other paragraphs, facts claimed to constitute matter of defense to the action on the supersedeas bond, and alleging that the appellee was informed thereof before that action, and that the appellants had no notice or knowledge of the action on the supersedeas bond, averred that the judgment in that action "was entered by collusion and fraudulent agreement between the parties, for the purpose of enabling" the appellee "to make out a case against" the appellants "upon its indemnity bond, and that the pretended payment by" the appellee "to W. E. Caldwell Company of the amount of said judgment, as set forth in the plaintiff's complaint, was not made, but that such payment and transaction is colorable, and made in bad faith and for the purpose of deceiving and defrauding defendants; that said plaintiff allowed the judgment to be taken against it by default, and without making any defense, when it had knowledge of such defense, for the purpose of defrauding these defendants."

This denial of payment was included by the first paragraph of answer—the general denial—which the appellants were not prevented by the court's rulings from supporting by evidence. So far as the general averments of fraud and collusion are concerned, they can not be regarded as relating to any definite conduct of the appellee, other than its failure to make defense in the action on the supersedeas bond; but in view of the proved and unquestioned fact that the pulley company had notice of the action on the supersedeas bond, given to it by the appellee, and opportunity to set up any defense it might be supposed to have in that action, it can not claim to have been harmed by the failure of the appellee to defend

for it, there being no showing or pretense that the judgment was in any way one not proper to be rendered in the cause in the absence of any defense.

The controlling facts were shown by written evidence. The appellants having declined to attempt to support by evidence their answer of denial and their answer of payment, and the writing and the receipt of letters showing notice of the action on the supersedeas bond, and opportunity of the pulley company to defend therein, having been proved, the court did not err in instructing the jury to render the only verdict proper under the circumstances. It would have been the manifest duty of the court to grant a new trial, on motion, if a contrary verdict had been returned.

Judgment affirmed.


## ON PETITION FOR REHEARING.

BLACK, J.—We are requested by learned counsel for the appellants to set forth in full in our opinion on their petition for a rehearing the letter of Mr. Mullen, general agent of the appellee, of June 30, 1900, and the answer thereto, mentioned in our former opinion.

The letter of Mr. Mullen, dated June 30, 1900, was addressed to the pulley company at South Bend, Indiana, and signed by Mr. Mullen as general agent, and the body thereof was as follows: "I wish to acknowledge receipt of your favor of the 18th, enclosing a copy of Mr. Phelps' letter of the 16th, and trust you will pardon my delay in replying to the same, but sickness and inability to catch Mr. Phelps at his office has caused the same. I to-day saw Mr. Phelps, and have ascertained that on yesterday he filed suit against us. I advised Mr. Phelps that I hardly thought this was necessary, as from your letter he could see that you were willing to settle the amount, less the amount of pulleys which had been disposed of since the litigation

began, and for which they received payment.   Mr. Phelps
thereupon advised me he would take the matter up with
Mr. Caldwell and ascertain what figure he would settle
for and would advise me, and on receipt of this letter
I will immediately advise you."

The letter of Mr. Phelps of the 16th, referred to above
as enclosed in the letter of the pulley company, was ad-
dressed to it, and in the body thereof was as follows:
"As requested, I send you herewith statement which has
been furnished to Mr. Mullen, showing the amount due:
$1,187.59, amount of judgment, with interest thereon at
six per cent. per annum from the date of the judgment,
viz., from the 19th day of January, 1897; cost of the
Jefferson Circuit Court, $74.45; cost of the court of ap-
peals, $23.05.   You will understand this is not a claim
we are making, but it is the amount fixed by judgment
and absolutely due under the bond.   I trust you will
make remittance on receipt of this, as my clients are com-
plaining at me for delaying the matter.   If you have
any controversy with Caldwell & Co. about the amount
of the pulleys, they are perfectly responsible and you
can settle with them.   I hope you will settle this matter
at once, as I am not in a position where it can be longer
delayed."

The letter of the pulley company to Mr. Mullen at Louis-
ville, Kentucky, June 18, 1900, was in the body thereof as
follows:  "I enclose letter just received from Mr. Phelps,
from which you will see that the fellow Caldwell expects
us to pay the full amount of the court judgment with
interest and then take our chances of getting from him
the amount of $504.67, which is the value of the pulleys
he has sold since he swore to the inventory in court.   I
write to advise you that we will not settle on any such
basis and will resist to the last point any demand to
collect that amount.   We have sent you the invoice show-
ing the amount as above; this checking was made by

my son and Caldwell's warehouse man, at the time my son was to see you. We enclose letter just received from Phelps, and ask you kindly to return it as soon as you note contents."

The answer of the pulley company to Mr. Mullen, above mentioned, was dated July 2, 1900, and was in the body thereof as follows: "Your favor just received. We note what you say about action of Mr. Phelps, and we only have to say, it will be a long time before we will pay on the basis of his demands. It is simply absurd to ask us to pay the judgment in full, when he has sold more than a third of the pulleys scheduled to return to us. When they present a proper offer of settlement, we will settle the matter, as we are anxious as they are to get rid of the disagreeable deal. Common sense, if there was no law, would tell anyone that they would have to deduct from their bill such as they have sold, as they, as we understand the case, had no right to sell any without court permission, and, doing so, make the deficiency good to us. We have press copy of Caldwell's letter to Phelps in which he says he sold the pulleys because he was afraid the case would go against him. This would show that they were sold before the judgment was rendered; consequently, they are not entitled to interest on the balance of the account since the judgment was rendered. If they want to sue, we have no way to prevent it, but we will defend to the 'long limit' against collection of more than the amount."

After long correspondence, in which the prospective suit had been mentioned and threatened, the subject-matter of the suit being fully known to the appellant, it was definitely informed by Mr. Mullen in his letter of June 30 that he had ascertained that on the day previous Mr. Phelps had "filed suit against us." In answer to this the appellant wrote Mr. Mullen, July 2, 1900, "we note what you say about action of Mr. Phelps." Upon further

consideration, we are constrained to adhere to the conclusion stated in our former opinion.

The petition for rehearing is overruled.